MICHAEL R. LOZEAU (State Bar No. 142893)
DOUGLAS J. CHERMAK (State Bar No. 233382)
Law Office of Michael R. Lozeau
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel: (510) 749-9102
Fax: (510) 749-9103 (fax)
E-mail: mrlozeau@lozeaulaw.com

ANDREW L. PACKARD (State Bar No. 168690)
MICHAEL P. LYNES (State Bar No. 230462)
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, CA 94952
Tel: (707) 763-7227
Fax: (415) 763-9227
E-mail: andrew@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

CHRISTINE K. NOMA (State Bar No. 104751)
Wendel, Rosen, Black & Dean, LLP
1111 Broadway, Suite 2400
Oakland, CA 94607
Tel: (510) 834-6600
Fax: (510) 808-4679
E-mail: cnoma@wendel.com

Attorney for Defendant
AARON METALS COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>AARON METALS COMPANY, a corporation.<br><br>    Defendant. | Case No. 3:07-cv-03547-WHA<br><br>**STIPULATION TO DISMISS PLAINTIFF'S CLAIMS; [PROPOSED] ORDER GRANTING DISMISSAL [FRCP 41(a)(2)]**<br><br>Conference: January 10, 2008<br>Time: 11:00 A.M.<br>Courtroom: 9 |

1
2
3
4    WHEREAS, on March 18, 2007, Plaintiff California Sportfishing Protection Alliance ("CSPA") provided Defendant Aaron Metals Company ("Aaron Metals") with a Notice of Violations and Intent to File Suit ("Notice") under Clean Water Act § 505, 33 U.S.C. § 1365.

WHEREAS, on July 9, 2007 CSPA filed its Complaint against Aaron Metals in this Court, *California Sportfishing Protection Alliance v. Aaron Metals Company,* Case No. 3:07-cv-03457-WHA. Said Complaint incorporates by reference all of the allegations contained in CSPA's Notice.

WHEREAS, CSPA and Aaron Metals, through their authorized representatives and without either adjudication of CSPA's claims or admission by Aaron Metals of any alleged violation or other wrongdoing, have chosen to resolve in full by way of settlement the allegations of CSPA as set forth in the Notice and Complaint, thereby avoiding the costs and uncertainties of further litigation. A copy of the Settlement Agreement and Mutual Release of Claims ("Settlement Agreement"), without the attached exhibits, entered into by and between CSPA and Aaron Metals is attached hereto as Exhibit A and incorporated by reference.

WHEREAS, the parties submitted the Settlement Agreement via certified mail, return receipt requested, to the U.S. EPA and the U.S. Department of Justice and the 45-day review period set forth at 40 C.F.R. § 135.5 has completed and the federal agencies have submitted correspondence to the Court indicating that they have no objection to the terms of the Settlement Agreement.

NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to by and between the parties that CSPA's claims, as set forth in the Notice and Complaint, be dismissed. The parties respectfully request an order from this Court dismissing such claims. In accordance with paragraph 2 of the Settlement Agreement, the parties also request that this Court maintain jurisdiction over the parties through December 15, 2010, for the sole purpose of

///
///

1  resolving any disputes between the parties with respect to enforcement of any provision of
2  the Settlement Agreement.

3  Dated: January 2, 2008            Respectfully submitted,

                                     LAW OFFICE OF MICHAEL R. LOZEAU


                                     By:    /s/ *Douglas J. Chermak*_____
                                            Douglas J. Chermak
                                            Attorney for Plaintiff California Sportfishing
                                            Protection Alliance


                                     WENDEL, ROSEN, BLACK & DEAN, LLP


                                     By:    /s/ *Christine K. Noma* (as authorized on 1/2/08)
                                            Christine K. Noma
                                            Attorney for Defendant Aaron Metals Company

**[PROPOSED] ORDER**

Good cause appearing, and the parties having stipulated and agreed,

IT IS HEREBY ORDERED that Plaintiff California Sportfishing Protection Alliance's claims against Defendant Aaron Metals Company, as set forth in the Notice and Complaint filed in Case No. 3:07-cv-03457-WHA, are hereby dismissed.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over the parties through December 15, 2010 for the sole purpose of enforcing compliance by the parties of the terms of the Settlement Agreement, attached to the parties' Stipulation to Dismiss as Exhibit A.

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: January 3, 2008              _____
                                    Judge William H. Alsup
                                    United States District Judge

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("AGREEMENT") is entered into between the California Sportfishing Protection Alliance ("CSPA") and Aaron Metals Company ("Aaron Metals") (collectively, the "SETTLING PARTIES") with respect to the following facts and objectives:

## RECITALS

**WHEREAS**, CSPA is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement, and restoration of the San Francisco Bay, San Leandro Bay, and other California waters;

**WHEREAS**, Aaron Metals is a corporation organized under the laws of the State of California that owns and operates a non-ferrous scrap metal recycling facility at 750 105th Avenue, Oakland, California (the "Facility") pursuant to State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereinafter, the "General Permit"). A map of the Facility is attached hereto as Exhibit A and incorporated by reference;

**WHEREAS**, on March 22, 2007, CSPA provided Aaron Metals a Notice of Violation and Intent to File Suit ("60-Day Notice Letter") under Section 505 of the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365;

**WHEREAS**, on July 9, 2007, CSPA filed its Complaint in the United States District Court for the Northern District of California against Aaron Metals (California Sportfishing Protection Alliance v. Aaron Metals Company, Case No. 3:07-cv-03547-WHA). A true and correct copy of the Complaint, including the 60-Day Notice Letter, is attached hereto as Exhibit B and incorporated by reference;

**WHEREAS**, Aaron Metals denies any and all of CSPA's claims in its 60-Day Notice Letter and Complaint;

1

**WHEREAS**, CSPA and Aaron Metals, through their authorized representatives and without either adjudication of CSPA's claims or admission by Aaron Metals of any alleged violation or other wrongdoing, have chosen to resolve in full CSPA's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

**WHEREAS**, CSPA and Aaron Metals have agreed that it is in their mutual interest to enter into this AGREEMENT setting forth the terms and conditions appropriate to resolving CSPA's allegations set forth in the 60-Day Notice Letter and Complaint.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, CSPA and Aaron Metals hereby agree as follows:

### EFFECTIVE DATE

1. The term "Effective Date," as used in this AGREEMENT, shall mean the last date on which the signature of a party to this AGREEMENT is executed.

### COMMITMENTS OF CSPA

2. **Stipulation to Dismiss and [Proposed] Order**. Within ten (10) calendar days of the expiration of the Agencies' review period specified in Paragraph 18 below, CSPA shall file a Stipulation to Dismiss and [Proposed] Order thereon pursuant to Federal Rule of Civil Procedure 41(a)(2) with the United States District Court for the Northern District of California ("District Court"), with this AGREEMENT attached and incorporated by reference, specifying that CSPA is dismissing all claims in CSPA's Complaint. Consistent with Paragraphs 24 and 25 herein, the Stipulation to Dismiss and [Proposed] Order shall state that the District Court will maintain jurisdiction through December 15, 2010 for purposes of resolving any disputes between the SETTLING PARTIES with respect to any provision of this AGREEMENT. If the District Court chooses not to enter the Order, this AGREEMENT shall be null and void.

## COMMITMENTS OF AARON METALS

3.  **Compliance with General Permit.** Aaron Metals agrees to operate the Facility in compliance with the applicable requirements of the General Permit and Clean Water Act.

4.  **MITIGATION PAYMENT.** In recognition of the good-faith efforts by Aaron Metals to comply with all aspects of the General Permit and the Clean Water Act, and in lieu of payment by Aaron Metals of any penalties, which may have been assessed in this action if it had proceeded to trial, Aaron Metals agrees to pay the sum of forty thousand dollars ($40,000.00) to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to environmentally beneficial projects within the San Francisco Bay, relating to water quality improvements in the area, provided that the Rose Foundation agrees that neither the Rose Foundation nor any recipients will not use or grant any funds provided by Aaron Metals to engage in political lobbying activity or to fund litigation. The Rose Foundation shall earmark the Mitigation Payment as follows: Twenty thousand dollars ($20,000.00) to be paid to Save The Bay of Oakland, California contingent on the Rose Foundation's receipt of a project proposal from Save The Bay designed to improve water quality within the San Francisco Bay and twenty thousand dollars ($20,000.00) to be distributed by the Rose Foundation to recipients for projects designed to improve water quality within San Francisco Bay . Payment shall be made by Aaron Metals by December 30, 2007 or within fifteen (15) calendar days of the District Court's entry of the Order described in Paragraph 2 of this AGREEMENT, whichever is sooner. Payment by Aaron Metals shall be made in the form of a single check payable to the "Rose Foundation."

5.  **Implemented Storm Water Controls.** Aaron Metals shall maintain in good working order all storm water collection and treatment systems currently installed or to be installed pursuant to this AGREEMENT, including, but not limited to, existing housekeeping measures.

6.  **Increased Housekeeping Measures.** Aaron Metals shall institute the following accelerated pavement cleaning schedule at the facility:

a. By November 14, 2007, Aaron Metals shall purchase a Minuteman Parker Vac-35.

b. Aaron Metals shall conduct year-round, a minimum of weekly manual sweepings of key material transfer areas and of areas with significant visible accumulation of sediment or debris. Prior to the rainy season, Aaron Metals shall conduct a thorough sweeping of the entire Facility using a Minuteman Parker Vac-35 wherever feasible and manual sweepers where vacuum sweeping is infeasible. During the rainy season (October 1 through May 31), Aaron Metals shall conduct daily manual sweepings of the material transfer areas identified on Exhibit A and of areas with visible accumulation of sediment or debris and weekly manual sweepings of the entire Facility. During the rainy season, vacuuming shall be conducted as needed to supplement the manual sweeping, but at least twice weekly, of the material transfer areas identified on Exhibit A and of areas with visible accumulation of sediment or debris.

c. All sweeping activities performed at the Facility shall be recorded in a sweeping log, once a week and a sample blank log form will be included in the Facility's Annual Report and the Storm Water Pollution Prevention Plan.

7. **Monitoring**. Aaron Metals agrees to perform the monitoring described herein during the 2007-2008, 2008-2009, and 2009-2010 rainy seasons in addition to the minimum monitoring requirements of the General Permit.

a. For the 2007-2008 rainy season, in order to evaluate the need for modifications to BMPs, Aaron Metals shall sample and analyze storm water discharges from all storm water discharge locations during four (4) storm events that result in discharge consistent with the requirements and protocols set forth in the General Permit. For the 2008-2009 and 2009-2010 rainy seasons, Aaron Metals shall sample and analyze storm water discharges in accordance with the requirements and protocols set forth in

4

the General Permit, unless additional sampling is agreed upon pursuant to the meet and confer process described in Paragraph 11 below.

b. Aaron Metals shall install drainage features, such as berms, sand bags, physical barriers and/or pumping systems that shall collect and convey any and all storm water draining from the front of the Facility to a single discharge location from which Aaron Metals can collect a representative sample of storm water from that portion of the Facility prior to such storm water commingling with storm water from the adjacent street. Aaron Metals shall analyze each sample for total suspended solids, pH, oil and grease, electrical conductivity, copper, aluminum, zinc, chemical oxygen demand, lead, iron, and arsenic.

c. In accordance with the General Permit, for one rain event each month occurring during the 2007-2008, 2008-2009, or 2009-2010 rainy seasons that results in any stormwater discharge from the Facility during regularly scheduled operating hours, Aaron Metals shall conduct visual observations of all known and suspected storm water discharge locations. At a minimum, visual observations shall be made of the fence-line along the southern and western edges of the Facility, the four on-site sumps that collect water from the middle and rear portions of the property, and the locations to which any storm water collected in those sumps is pumped. Aaron Metals shall maintain a log describing all observations of conditions relating to the management of storm water at the Facility, including any discharges of storm water from the Facility and operations of the pumps. If pumping from the sumps results in a discharge from the Facility, the log shall include the pumping rate, date, time, and length of operation of the sumps.

d. During each of its monthly wet weather storm inspections required by the General Permit, Aaron Metals shall take representative photographs of discharges from the front of the Facility; the rear gate along 107th Street;

any discharges of storm water or other materials to any storm drains from the Facility; each of the four sumps; and each storm water management measure installed at the Facility.

  e. All photographs required by this Settlement Agreement shall be in color and electronically formatted. Each photograph shall be identified by date, the person taking the photograph and the location of the Facility being photographed. The title of each electronic photograph shall include, at a minimum, the date it was taken, the initials of the person taking the photograph and an abbreviation identifying the location of the photographed area. Any photograph required by this Settlement Agreement shall be provided to CSPA upon request via compact disc(s).

  f. All maintenance, repair, and replacement activities relating to the Facility's storm water conveyance and treatment infrastructure shall be appropriately documented. Such documentation shall include, but not necessarily be limited to, information showing the date, time, place, person responsible, a brief description of all repairs or replacements;, and photographs of the repairs or replacements. Such documentation shall also be included in the Facility's Annual Report submitted to the Regional Water Quality Control Board ("Regional Board").

  8. **Monitoring Results**. Results from Aaron Metals' sampling and analysis during the term of this AGREEMENT shall be provided to CSPA within 30 days of receipt of the sampling results by Aaron Metals or its counsel.

  9. **Meet and Confer Regarding Exceedence of Levels of Potential Concern**. If analytical results of storm water samples taken by Aaron Metals during the 2007-2008, 2008-2009 and/or the 2009-2010 rainy season indicate that storm water discharges from the Facility exceed the United States Environmental Protection Agency's Benchmarks as established in the Multi-Sector Permit (FR 64746) ("Benchmarks"), which include the following: Total Suspended Solids: 100 mg/L; Specific Conductance: 200 µmhos/cm; Oil & Grease: 15 mg/L; pH: 6.0-9.0

s.u.; Chemical Oxygen Demand: 120 mg/L; Aluminum: 0.75 mg/L; Zinc: 0.117 mg/L; Iron: 1.0 mg/L; Copper: 0.0636 mg/L; Lead: 0.0816 mg/L; or Arsenic: 0.16854 mg/L, Aaron Metals agrees to implement additional storm water pollutant control measures aimed at reducing pollutants in the Facility's storm water to levels at or below these Benchmark concentrations.

In furtherance of that objective, Aaron Metals shall prepare a written statement ("Memorandum") discussing:

   (1) Any exceedence or exceedences;

   (2) An explanation of the possible cause(s) and/or source(s) of any exceedence; and

   (3) Additional best management practices that will be taken to further reduce the possibility of future exceedance(s).

Such Memorandum shall be e-mailed and sent via first class mail to CSPA not later than July 1st following the conclusion of each rainy season. If any analytical results for aluminum, zinc, copper, lead, or arsenic exceed the corresponding Benchmark concentrations more than once in a single rainy season, Aaron Metals shall implement additional BMPs designed to reduce the pollutants in its storm water discharge to levels less than or equal to the Benchmark concentration.

10. Any additional BMPs set forth in the Memorandum shall be implemented as soon as practicable, but not later than 21 days from the due date of the Memorandum, or as soon thereafter as possible where 1) structural changes or other reasonable constraints, such as procurement of equipment, require longer than 21 days to complete 2) weather-related conditions render immediate implementation infeasible; or 3) the SETTLING PARTIES agree in writing to defer implementation of specific measures in order to effectively meet and confer in accordance with paragraph 11. Within thirty (30) days of implementation, Aaron Metals' SWPPP shall be amended to include all additional BMP measures designated in the Memorandum.

11. Upon receipt of the Memorandum, CSPA may review and comment on any additional BMPs. If requested by CSPA within 21-days of receipt of such Memorandum, CSPA and Aaron Metals shall meet and confer and conduct a site inspection within 60-days after the

7

due date of the Memorandum to discuss the contents of the Memorandum and the adequacy of proposed BMPs to improve the quality of the Facility's storm water to levels at or below the Benchmark concentrations. If within 21-days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional BMPs set forth in the Memorandum, the SETTLING PARTIES may agree to seek a settlement conference with the Magistrate Judge assigned to this action pursuant to Paragraphs 24 and 25 below. If the SETTLING PARTIES fail to reach agreement on additional measures, CSPA may bring a motion before the Magistrate Judge consistent with Paragraphs 24 and 25 below. If CSPA does not request a meet and confer regarding the Memorandum within the 21 day comment period provided for in this paragraph, CSPA shall waive any right to object to such Memorandum pursuant to this AGREEMENT.

12.     Any concurrence or failure to object by CSPA with regard to the reasonableness of any additional measures implemented by Aaron Metals shall not be deemed to be an admission of the adequacy of such measures should they fail to reduce the Facility's storm water discharges to below relevant Benchmark concentrations.

13.     In addition to any site inspections conducted as part of meeting and conferring on additional measures set forth above, Aaron Metals shall permit representatives of CSPA to perform one (1) additional site visit per rainy season to the Facility during normal daylight business hours during the term of this AGREEMENT; provided that CSPA provides Aaron Metals with at least two working days prior notice via any means that ensures Aaron Metals have received and are aware of said notice.

14.     **Provision of Documents and Reports**. During the life of this AGREEMENT, Aaron Metals shall provide CSPA with a copy of all documents submitted to the Regional Board or the State Water Resources Control Board ("State Board") concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the General Permit. Such documents and reports shall be mailed to CSPA contemporaneously with submission to such agency. Aaron Metals also shall provide CSPA a copy of all documents referenced in this agreement, including but not limited to logs, photographs, or analyses, within 7 days of a written request (via e-mail or regular mail) by CSPA.


15. **Amendment of SWPPP.** Within sixty (60) days of the Effective Date of this AGREEMENT, Aaron Metals shall amend the Facility's Storm Water Pollution Prevention Plan ("SWPPP") to incorporate all changes, improvements, sample log forms, and best management practices set forth in or resulting from this AGREEMENT. A copy of the amended SWPPP shall be provided to CSPA within thirty (30) days of completion.

16. **Fees, Costs, and Expenses.** As reimbursement for CSPA's investigative, expert and attorneys' fees and costs, Aaron Metals shall pay CSPA the sum of thirty thousand dollars ($30,000.00). Payment shall be made by Aaron Metals within fifteen (15) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT. Payment by Aaron Metals to CSPA shall be made in the form of a single check payable to "Law Office of Michael R. Lozeau Attorney Client Trust Account," and shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs incurred by CSPA that have or could have been claimed in connection with CSPA's claims, up to and including the Effective Date of this AGREEMENT.

17. **Compliance Oversight Costs:** As reimbursement for CSPA's future costs that will be incurred in order for CSPA to monitor Aaron Metals' compliance with this AGREEMENT and to effectively meet and confer and evaluate monitoring results for the Facility, Aaron Metals agrees to reimburse CSPA for costs incurred in overseeing the implementation of this AGREEMENT up to but not exceeding $5,000 per rainy season. Costs reimbursable pursuant to this paragraph may include, but are not limited to, costs by CSPA or its counsel to conduct site inspections, review of water quality sampling reports, review of annual reports, discussion with representatives of Aaron Metals concerning potential changes to compliance requirements, preparation and participation in meet and confer sessions and mediation, and water quality sampling. Up to two annual payments (one addressing any monitoring associated with the 2007-2008 rainy season and one addressing monitoring associated with the 2008-2009 rainy season) shall be made payable to Michael R. Lozeau Attorney-Client Trust Account within thirty (30) days of receipt of an invoice from CSPA which contains a description of fees and costs incurred by CSPA to monitor implementation of the SETTLEMENT AGREEMENT during the previous twelve (12) months.

18.     **Review by Federal Agencies**. Aaron Metals shall submit this AGREEMENT to the U.S. EPA and the U.S. Department of Justice (hereinafter, the "Agencies") via certified mail, return receipt requested, within five (5) days after the Effective Date of this AGREEMENT for review consistent with 40 C.F.R. § 135.5. The Agencies' review period expires forty-five (45) days after receipt of the AGREEMENT by both Agencies, as evidenced by the return receipts, copies of which shall be provided to CSPA upon receipt by Aaron Metals. In the event that the Agencies comment negatively on the provisions of this AGREEMENT, CSPA and Aaron Metals agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies. If CSPA and Aaron Metals are unable to resolve any issue(s) raised by the Agencies in their comments, CSPA and Aaron Metals agree to expeditiously seek a settlement conference with the Magistrate Judge assigned to the Complaint in this matter to resolve the issue(s).

## NO ADMISSION OR FINDING

19.     Neither this AGREEMENT nor any payment pursuant to the AGREEMENT shall constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule or regulation. However, this AGREEMENT and/or any payment pursuant to the AGREEMENT may constitute evidence in actions seeking compliance with this AGREEMENT.

## MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

20.     In consideration of the above, and except as otherwise provided by this AGREEMENT, the SETTLING PARTIES hereby forever and fully release each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the SETTLING PARTIES have against each other arising from CSPA's allegations and claims as set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

21.     The SETTLING PARTIES acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The SETTLING PARTIES hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

22. For the period beginning on the Effective Date and ending on December 15, 2010, CSPA agrees that neither CSPA, its officers, executive staff, members of its governing board nor any organization under the control of CSPA, its officers, executive staff, or members of its governing board, will file any lawsuit against Aaron Metals seeking relief for alleged violations of the Clean Water Act or violations of the General Permit. CSPA further agrees that, beginning on the Effective Date and ending on December 15, 2010, CSPA will not support other lawsuits, by providing financial assistance, personnel time or other affirmative actions, against Aaron Metals that may be proposed by other groups or individuals who would rely upon the citizen suit provision of the Clean Water Act to challenge Aaron Metal's compliance with the Clean Water Act or the General Permit.

## TERMINATION DATE OF AGREEMENT

23. This AGREEMENT shall terminate on December 15, 2010.

## DISPUTE RESOLUTION PROCEDURES

24. Except as specifically noted herein, any disputes with respect to any of the provisions of this AGREEMENT shall be resolved through the following procedure. The SETTLING PARTIES agree to first meet and confer to resolve any dispute arising under this AGREEMENT. In the event that such disputes cannot be resolved through this meet and confer process, the SETTLING PARTIES agree to request a settlement meeting before the Magistrate Judge assigned to this action. In the event that the SETTLING PARTIES cannot resolve the

dispute by the conclusion of the settlement meeting with the Magistrate Judge, the SETTLING PARTIES agree to submit the dispute via motion to the Magistrate Judge.

25.     In resolving any dispute arising from this AGREEMENT, the Magistrate Judge shall have discretion to award attorneys' fees and costs to either party. The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Magistrate Judge. The Magistrate Judge shall award relief limited to compliance orders and awards of attorneys' fees and costs, subject to proof. The SETTLING PARTIES agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference and motion practice.

## BREACH OF SETTLEMENT AGREEMENT

26.     **Impossibility of Performance**. Where implementation of the actions set forth in this AGREEMENT, within the deadlines set forth in those paragraphs, becomes impossible, as defined under California statutory and case laws, despite the timely good faith efforts of the SETTLING PARTIES, the party who is unable to comply shall notify the other in writing within seven (7) days of the date that the failure becomes apparent, and shall describe the reason for the non-performance. The SETTLING PARTIES agree to meet and confer in good faith concerning the non-performance and, where the SETTLING PARTIES concur that the non-performance was or is impossible, despite the timely good faith efforts of one of the SETTLING PARTIES, new performance deadlines shall be established. In the event that the SETTLING PARTIES cannot timely agree upon the terms of such a stipulation, either of the SETTLING PARTIES shall have the right to invoke the dispute resolution procedure described herein.

## GENERAL PROVISIONS

27.     **Construction**. The language in all parts of this AGREEMENT shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

28.  **Choice of Law**. This AGREEMENT shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

29.  **Severability**. In the event that any provision, section, or sentence of this AGREEMENT is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

30.  **Correspondence**. All notices required herein or any other correspondence pertaining to this AGREEMENT shall be sent by regular, certified, or overnight mail as follows:

If to CSPA:

Bill Jennings, Chairman
California Sportfishing Protection Alliance
3536 Rainier Road
Stockton, CA 95204
Tel: (209) 464-5067
deltakeep@aol.com

And to:

Michael R. Lozeau
Douglas J. Chermak
Law Office of Michael R. Lozeau
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel: (510) 749-9102
mrlozeau@lozeaulaw.com
djchermak@lozeaulaw.com

If to Aaron Metals:

Paul Forkash
Aaron Metals Company
750 105th Avenue
Oakland, CA 94603
(510) 569-6767
Paul_forkash@aaronmetals.com
Jesykah_forkash@aaronmetals.com

And to:

Christine K. Noma
Wendel, Rosen, Black & Dean, LLP
1111 Broadway, Suite 2400
Oakland, CA 94607
510-834-6600
cnoma@wendel.com

Notifications of communications shall be deemed submitted on the date that they are e-mailed, postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices.

31. **Counterparts**. This AGREEMENT may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this AGREEMENT.

32. **Assignment**. Subject only to the express restrictions contained in this AGREEMENT, all of the rights, duties and obligations contained in this AGREEMENT shall inure to the benefit of and be binding upon the SETTLING PARTIES, and their successors and assigns.

33. **Modification of the Agreement**: This AGREEMENT, and any provisions herein, may not be changed, waived, discharged or terminated unless by a written instrument, signed by the SETTLING PARTIES.

34. **Full Settlement**. This AGREEMENT constitutes a full and final settlement of this matter. It is expressly understood and agreed that the AGREEMENT has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

35. **Integration Clause**. This is an integrated AGREEMENT. This AGREEMENT is intended to be a full and complete statement of the terms of the agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this AGREEMENT.

11/12/2007  14:06    5105698970                    AARON METALS                         PAGE  03/03

36. **Authority.** The undersigned representatives for CSPA and Aaron Metals each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

Date: 11-12-____, 2007

AARON METALS COMPANY

By: Paul Forkash
Title: Owner

Date: 11-13____, 2007

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

By: Bill Jennings
Title: Executive Director

APPROVED AS TO FORM:

Date: 1-12____, 2007

For DEFENDANT

WENDEL, ROSEN, BLACK & DEAN

By: Christine K. Noma, Esq.

Date: 11/13____, 2007___

For PLAINTIFF

LAW OFFICE OF MICHAEL LOZEAU

By: Michael R. Lozeau, Esq.

15

SETTLEMENT AGREEMENT: CSPA v. AARON METALS – Case No. 3:07-cv-03547-WHA
013576.0003\829125.3